**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION**

| | |
|---|---|
| SCOTT ECKERT, | ) |
|       Plaintiff, | ) |
| v. | )    No. 1:11CV211 LMB |
| DALE BOWEN, | ) |
|       Defendant. | ) |

## MEMORANDUM AND ORDER

This matter is before the court on the Complaint of Scott Eckert alleging excessive use of force under 42 U.S.C. § 1983. This case has been assigned to the undersigned United States Magistrate Judge pursuant to the Civil Justice Reform Act and is being heard by consent of the parties. See 28 U.S.C. § 636(c). Presently pending before the court is Defendant Bowen's Motion for Summary Judgment. (Doc. No. 50).

### Background

Plaintiff was incarcerated at Southeast Correctional Center ("SECC") in Charleston, Missouri, at the time of the allegations asserted in his Complaint. Defendant Bowen was a Correctional Officer I employed by the Missouri Department of Corrections ("MDOC"), and assigned to work at SECC.

Plaintiff alleges that, on December 2, 2010, he was standing with his head and neck in between the door and door frame of the cook's office door at SECC, speaking with a cook employed by the MDOC. Plaintiff claims that Defendant Bowen approached plaintiff from behind and shoved him against the door, with knowledge that plaintiff's head was in between the door and door frame. Plaintiff alleges that, as a result of the actions of Defendant Bowen, he received

injuries to his head, neck and shoulder, blurred vision in his left eye, loss of hearing in his left ear, and general pain and suffering.

In Count I of his Complaint, plaintiff alleges that Defendant Bowen subjected plaintiff to cruel and unusual punishment by smashing his head between the door and door frame, in violation of the Fourth and Fourteenth Amendments and 42 U.S.C. § 1983. Plaintiff brings his claim against Defendant Bowen in his individual capacity, and seeks monetary damages, including punitive damages.

In Count II of his Complaint, plaintiff asserts state law assault and battery claims against Defendant Bowen.

## Discussion

### A. Standard

The Court may grant a motion for summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The substantive law determines which facts are critical and which are irrelevant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Only disputes over facts that might affect the outcome will properly preclude summary judgment. Id. Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Id.

A moving party always bears the burden of informing the court of the basis of its motion. Celotex Corp., 477 U.S. at 323. Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of

material fact, not the "mere existence of some alleged factual dispute." Fed. R. Civ. P. 56(e); Anderson, 477 U.S. at 248. The nonmoving party may not rest upon mere allegations or denials of his pleading. Anderson, 477 U.S. at 258. "[A] properly supported motion for summary judgment is not defeated by self-serving affidavits." Conolly v. Clark, 457 F.3d 872, 876 (8th Cir. 2006) (citing Davidson & Assocs. v. Jung, 422 F.3d 630, 638 (8th Cir. 2005)).

In passing on a motion for summary judgment, the court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in his favor. Celotex Corp., 477 U.S. at 331, n.2. The court's function is not to weigh the evidence but to determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249.

**B.     Defendant's Motion**

In his Motion for Summary Judgment, defendant contends that he is entitled to qualified immunity. Defendant also argues that he is entitled to summary judgment as a matter of law because plaintiff cannot demonstrate defendant used excessive force in violation of his Eighth Amendment rights. Specifically, defendant contends that plaintiff failed to establish a genuine issue of material fact that he sustained a sufficiently serious constitutional violation because his injuries are de minimis and the force defendant applied, if any, was de minimis. Defendant also argues that plaintiff failed to show any evidence of malicious intent.

**1.     Eighth Amendment § 1983 Claims**

To prove an Eighth Amendment violation, a prisoner must satisfy two requirements, one objective and one subjective. Irving v. Dormire, 519 F.3d 441, 446 (8th Cir. 2008). The first requirement tests whether viewed objectively, the deprivation of rights was sufficiently serious. Id. The second requirement is subjective and requires that the inmate prove that the prison

officials had a "sufficiently culpable state of mind." Id. (quoting Farmer v. Brennan, 511 U.S. 825, 834 (1994)). In excessive force claims, the subjective inquiry is whether the force was used "in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." Id. (quoting Whitley v. Albers, 475 U.S. 312, 320-21 (1986)).

"The Eighth Amendment bars correctional officers from imposing unnecessary and wanton pain on inmates, regardless of whether there is evidence of any significant injury." Johnson v. Blaukat, 453 F.3d 1108, 1112 (8th Cir. 2006) (citing Hudson v. McMillian, 503 U.S. 1, 9 (1992)). Nevertheless, the "Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." Hudson, 503 U.S. at 9-10 (internal quotations omitted). "Officers may reasonably use force in a good-faith effort to maintain or restore discipline but may not apply force maliciously and sadistically to cause harm." Id. at 6 (internal quotation omitted).

As an initial matter, plaintiff objects to defendant's Exhibit B, plaintiff's institutional medical records, as hearsay. Defendant contends that plaintiff's medical records qualify as business records and are an exception to the hearsay rule. Defendant further argues that statements made in plaintiff's medical records are for the purposes of medical treatment. Defendant has submitted Exhibit F, a Medical Records Affidavit for Exhibit B, in which Kimberly Randolph, Medical Records Custodian of Potosi Correctional Center, certifies that the medical records contained in Exhibit B have been maintained in the regular and ordinary course of the business at that facility. The undersigned finds that plaintiff's medical records are properly authenticated and are admissible under the business records exception to the hearsay rule. See

Fed. R. Evid. 803(6).

Plaintiff also objects to defendant's Exhibit E, a handwritten, signed statement of plaintiff filed under seal, as hearsay. Plaintiff contends that Exhibit E is not a sworn statement under oath, nor is it certified as a business record. Defendant argues that Exhibit E is admissible as an admission by a party opponent. The court agrees that plaintiff's handwritten, signed statement dated December 2, 2010, is admissible as an admission of a party opponent pursuant to Federal Rule of Evidence 801(d)(2).

It is undisputed that, at approximately 1:00 p.m. on December 2, 2010, plaintiff was standing in the doorway from the kitchen to the cook's office with his head through the doorway, with the left side of his neck resting on the door jam and the door resting on his right shoulder. Defendant Bowen opened the cook's office door and walked into the office. Plaintiff alleges that defendant slammed the door for no reason on plaintiff, pinning his neck between the door and the door frame, causing him injuries to his head, neck, ear, and eye which persist to this day. Defendant contends that he did not intentionally shut the door on plaintiff's head. Defendant also claims that there is no evidence that the door shut on plaintiff's neck, pinning the sides of his neck between the door and the door jam.

Even if the court accepts that the door made contact with plaintiff's neck, plaintiff cannot support an excessive force claim because his injuries and the force applied were de minimis. The Supreme Court has admonished the district courts to heed "Hudson's direction to decide excessive force claims based on the nature of the force rather than the extent of the injury." Wilkins v. Gaddy, 559 U.S. 34, 34 (2010) (per curiam). However, "the extent of the injury may also provide some indication of the amount of force applied." Id. at 37.

Here, plaintiff was examined by a nurse approximately one hour after the incident, at which time plaintiff complained of only a headache. See Def's Ex. A at 20; Ex. B at 31-32. Plaintiff stated to the nurse: "I have an old right sided neck and sholder[sic] injury from my high school days but earlier today my head got cought [sic] by a closing door in food service and H[sic] have a head ache [sic]." Def's Ex. B at 31. Plaintiff denied blurred vision. See id. Plaintiff's eyes, ears, and balance were checked. Def's Ex. A at 19. No bruises, cuts, or bleeding was noted. See Def's Ex. A at 79-80; Ex. B at 31-32. Plaintiff admitted that he had no visible injury. Def's Ex. A at 79-80. Plaintiff was found to be in no acute distress, and was diagnosed with headaches. Def's Ex. B at 32. Plaintiff was given acetaminophen. Id. When plaintiff entered the MDOC in December 2009, it was noted that plaintiff had a history of headaches. Def's Ex. B at 3.

On the day after the incident, December 3, 2010, plaintiff returned to the medical unit and complained of a headache. Id. at 31. Plaintiff was examined by Dr. Michael C. Hakala. Id. Dr. Hakala noted that he did not see "any abrasion or bruising on neck or head." Id. Dr. Hakala's assessment was cervical strain, left shoulder strain-mild, and headache. Id. Dr. Hakala prescribed ibuprofen and advised plaintiff to do exercises he had previously been given from physical therapy. Id. at 31, 192-95. Plaintiff had complained of neck and left shoulder pain in October 2010 and November 2010, and had been referred to physical therapy. Id. at 28-30. Plaintiff reported that he had been experiencing these symptoms for five to seven years. Id. at 29.

Plaintiff's alleged injuries of headaches and aggravation of pre-existing conditions are insufficient to support a finding of a constitutional violation. See Andrews v. Fuoss, 417 F.3d 813, 818 (8th Cir. 2005) ("Andrews alleges at most very minor injuries, likely nothing more than

the temporary and slight aggravation of pre-existing conditions [pain flare-up relating to pre-existing neck and back conditions that left Andrews with a sore neck and horrible headache]"); Lawson v. Vance, 41 Fed. Appx. 24, 25 (8th Cir. 2002) (unpub. per curiam) (assuming that the defendant slapped inmate plaintiff without provocation, where plaintiff could not show some visible sign of injury, the use of force was de minimis); Samuels v. Hawkins, 157 F.3d 557, 558 (8th Cir. 1998) (inmate failed to establish actual injury when he could not provide any evidence of damage to his eyes, though he claimed his eyes were damaged).

Plaintiff also claims that he experienced ringing in his left ear and blurred vision in his left eye as a result of the incident. First, despite plaintiff's claim that he had no issues with blurred vision in his left eye prior to the December 2010 incident, it was noted in December 2009 when plaintiff entered the custody of the MDOC that plaintiff had a history of eye strain and wore glasses. See Def's Ex. B at 4. Second, plaintiff's allegations of injuries to his left ear and left eye is inconsistent with his testimony that the door only made contact with the right side of his neck. Def's Ex. A at 12-13.

Plaintiff has offered no evidence to support his claim that contact between the door and the right side of his neck would cause injuries to his left eye and ear. Plaintiff admits he has not seen an eye doctor or undergone a hearing test since December 2010. Def's Ex. A at 52-53. Plaintiff has also failed to support his claims that the incident at issue aggravated his pre-existing injuries. In his Response to defendant's Motion for Summary Judgment, plaintiff cites only to his own deposition testimony regarding his injuries. Plaintiff's own self-serving allegations do not create a genuine issue of material fact that precludes summary judgment. See Conolly, 457 F.3d at 876 ("[A] properly supported motion for summary judgment is not defeated by self-serving

affidavits."). See also Stanback v. Best Diversified Prods., Inc., 180 F.3d 903, 909 (8th Cir. 1999) (finding general statements in affidavits and depositions are insufficient to defeat a properly supported summary judgment motion). Further, plaintiff testified that the pain in his left shoulder from his pre-existing injury has remained the same since the December 2010 incident. Def's Ex. A at 34. Thus, plaintiff has failed to demonstrate injuries that are sufficiently serious to establish a constitutional violation.

Similarly, plaintiff has failed to establish that the force allegedly used by Defendant Bowen was more than de minimis. Plaintiff contends that Defendant Bowen shut the door so hard and so fast on plaintiff's head that plaintiff "did not realize what was happening." Doc. No. 62 at 8. Plaintiff's statements do not provide any indication as to the amount of force applied. Plaintiff's actions immediately following the incident, however, belie his claim that Defendant Bowen used more than de minimis force. Plaintiff admits that he did not report the incident, finished his shift, and returned to his cell. See Def's Ex. A at 79; Ex. E. Plaintiff indicated in his statement that the incident was "no big deal," and that defendant was "just playing." Def's Ex. E. Plaintiff was evaluated by the medical unit later that day only because he was directed to by prison staff after they became aware of the incident. See Def's Ex. A at 17.

Plaintiff's lack of injuries are also indicative of the amount of force applied. See Wilkins, 559 U.S. at 37 ("the extent of the injury may also provide some indication of the amount of force applied"). Plaintiff claims that a large, metal kitchen door used in a prison facility was forcibly shut on his head, pinning the sides of his neck between the door and the door jam. See Def's Ex. C (photographs of door). Despite the serious nature of these claims, when plaintiff saw the nurse approximately one hour after the alleged incident, no signs of an injury were noted. See Def's Ex.

A at 79-80; Ex. B at 31-32. The day following the incident, Dr. Hakala noted that he did not see "any abrasion or bruising on neck or head." Def's Ex. B at 31. Plaintiff's lack of any visible sign of injury following the incident contradicts plaintiff's allegations.

In support of his claim that more than de minimis force was applied, plaintiff notes that there was no need to use force on plaintiff, and that Defendant Bowen did not fill out a use of force report regarding the incident. Defendant Bowen, however, has maintained that he did not intentionally apply force by slamming the door on plaintiff's head. Rather, Defendant Bowen claims that he simply opened the door. Defendant Bowen's failure to complete a use of force report is consistent with Defendant Bowen's claim that no force was applied.

Plaintiff's claim that there were no cameras in the area in which the incident occurred and that this demonstrates more than de minimis force was applied is also unavailing. Even if Defendant Bowen were aware that there were no cameras in the area at issue, this fact is not indicative as to the amount of force applied. Further, while no video footage is available, the incident occurred in the presence of the cook and other inmates were nearby in the kitchen.

Finally, plaintiff points to the facts that the MDOC conducted an investigation, Defendant Bowen refused to submit to a lie detector test, criminal charges were issued, and Defendant Bowen was placed on administrative leave after he was arrested, in support of his claim that his injuries and the force applied were more than de minimis. To the extent this evidence would be admissible, it does not support plaintiff's claim. The criminal charges against Defendant Bowen were ultimately dismissed, and Defendant Bowen was only placed on leave while the charges were pending. See Def's Ex. 2 at 58-59. Defendant Bowen was rehired at the same position, and held this position at the time of his deposition in connection with the instant matter. See id.

Pursuant to <u>Wilkins</u> and <u>Hudson</u>, however, the de minimis nature of plaintiff's injuries and the force used does not end the Court's inquiry. The overriding factor is whether the officers used force "in a good-faith effort to maintain or restore discipline," or applied force "maliciously and sadistically for the very purpose of causing harm." <u>Hudson</u>, 503 U.S. at 6. "The test for reasonableness or good faith application of force depends on 'whether there was an objective need for force, the relationship between any such need and the amount of force used, the threat reasonably perceived by the correctional officers, any efforts by the officers to temper the severity of their forceful response, and the extent of the inmate's injury.'" <u>Johnson</u>, 453 F.3d at 1112 (quoting <u>Treats v. Morgan</u>, 308 F.3d 868, 872 (8th Cir. 2002)).

As defendant maintains, even assuming plaintiff's neck was shut in the door, plaintiff has failed to show that Defendant Bowen intentionally caused this contact. Plaintiff claims that the incident was not an accident because Defendant Bowen stated "guess you had your head stuck in the wrong door this time." Doc. No. 62 at 11, Def's Ex. A at 11. Defendant Bowen testified that he told plaintiff that "he was in the wrong door" because the door was marked out of bounds. Pl's Ex. 2 at 34-36. The fact that Defendant Bowen told plaintiff that he was in an area marked out of bounds for offenders, a fact that plaintiff does not dispute, does not establish that defendant shut plaintiff's neck in the door "maliciously and sadistically" to cause harm. <u>Hudson</u>, 503 U.S. at 6.

In support of his claim that Defendant Bowen acted with malice, plaintiff argues that, if it were an accident, Defendant Bowen's response would have been "sorry," or "I didn't see you in the door." Doc. No. 62 at 10-11. Plaintiff, however, has not demonstrated that the door even made contact with his body. Defendant Bowen has admitted that he saw plaintiff in the doorway,

-10-

and that he pulled the door open, away from plaintiff, to walk through it. Def's Ex. D at 21-22. There is no evidence that plaintiff sustained any injuries if contact between the door and his body occurred, or that Defendant Bowen was aware of these injuries if they did occur. Consequently, the fact that Defendant Bowen did not apologize after the alleged incident does not establish malice.

The undisputed facts reveal that plaintiff and Defendant Bowen barely knew each other prior to the incident at issue, and that they had a normal working relationship. Def's Ex. A at 76-78. There had been no incidents between plaintiff and Defendant Bowen prior to December 2, 2010. See id. No altercations occurred between plaintiff and Defendant Bowen after the alleged incident. See id. at 72-73. Plaintiff did not report the incident or seek medical care immediately after the alleged incident occurred, but instead returned to work. See Def's Ex. A at 79. Plaintiff indicated that he believed the incident was "no big deal," and that Defendant Bowen was "just playing." Def's Ex. E. As previously discussed, plaintiff was evaluated in the medical unit only after he was directed to go there by prison officials, and no evidence of an injury was noted. Plaintiff has failed to present any evidence that any contact plaintiff may have had with the door was the result of malice on the part of Defendant Bowen.

As the Supreme Court has explained, "[w]hen the moving party has carried its burden under Rule 56(c)," as defendant has done here, his "opponent must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Scott v. Harris, 550 U.S. 372, 380 (2007) (quoting Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986)). Because plaintiff has not set forth

specific facts showing that there is sufficient evidence to allow a jury to return a verdict for him, the court will grant summary judgment to Defendant Bowen. See Anderson, 477 U.S. at 249; Celotex Corp., 477 U.S. at 324.

Having found that Defendant Bowen is entitled to summary judgment on the merits of plaintiff's § 1983 claims, it is unnecessary to determine whether qualified immunity also applies.

**2.    State Law Claims**

As noted above, plaintiff asserts state law assault and battery claims against Defendant Bowen in Count II of his Complaint.

District courts "may decline to exercise supplemental jurisdiction over" a state law claim if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Because Defendant Bowen's motion for summary judgment has been granted, the court declines to exercise supplemental jurisdiction over plaintiff's state law claims, and will dismiss those claims without prejudice. See id.; United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966) (if federal claims are dismissed before trial, remaining state claims should also be dismissed); Hassett v. Lemay Bank & Trust Co., 851 F.2d 1127, 1130 (8th Cir. 1988) (where federal claims have been dismissed, district courts may decline jurisdiction over pendent state claims as a "matter of discretion").

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Bowen's Motion for Summary Judgment (Doc. No. 50) be and it is **granted**. A separate Summary Judgment will be entered on this date.

**IT IS FURTHER ORDERED** that Count II be and it is **dismissed without prejudice**.

**IT IS FINALLY ORDERED** that Plaintiff's Motion to Extend Discovery for Limited Purposes of Conducting a Deposition (Doc. No. 40) be and it is **denied as moot**.

Dated this  26th   day of July, 2013.

*Lewis M. Blanton*
LEWIS M. BLANTON
UNITED STATES MAGISTRATE JUDGE